**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **S&S HEALTHCARE STRATEGIES, LTD.,** an Ohio limited liability company, 1385 Kemper Meadow Drive Cincinnati, Ohio 45240 | : : : : | Case No. _____ Judge _____ |
| Plaintiff, | : : | |
| | : | **COMPLAINT AND DEMAND FOR** |
| v. | : : | **JURY TRIAL** |
| **THREE RIVERS PROVIDER NETWORK, INC.,** a Nevada Corporation, 910 Hale Place, Suite 101 Chula Vista, California 92914 | : : : : : : : | |
| **Serve via Statutory Agents**: Robert Barnes 601 Figueroa Street Los Angeles, California 92194 | : : : : : : | |
| and | : : | |
| Incorp Services, Inc. 3773 Howard Hughes Parkway, Suite 500S Las Vegas, Nevada 89169-6014 | : : : : : | |
| Defendant. | : | |

Now comes Plaintiff S & S Healthcare Strategies, Ltd. ("S&S" or "Plaintiff"), and for its complaint against Defendant Three Rivers Provider Network, Inc. ("TRPN" or "Defendant"), hereby states as follows:

## SUMMARY AND NATURE OF ACTION

1.      This is a claim for declaratory judgment, breach of contract, promissory estoppel, and unjust enrichment. S&S is a third-party administrator specializing in creating, implementing, and providing full health care delivery systems.

2.     In early 2017, TRPN solicited, and subsequently contracted with S&S to, among other services, provide all activities and expenses associated with research, analysis, development, maintenance, and consultative work which in any way comprises the implementation of the TRPN technology and concepts known as the Direct Pay line of products (the "Implementation"), all with the intention of S&S and TRPN ultimately entering into more extensive merger and/or joint venture.

3.     TRPN made several misrepresentations, promises, and commitments to S&S in order to induce S&S into spending an extensive amount of time, effort, and expense on the Implementation.

4.     TRPN has failed to comply, and/or has otherwise breached, the promises and agreements made with S&S, proximately causing S&S to incur extensive damages.

## PARTIES. JURISDICTION, AND VENUE

5.     S&S is an Ohio limited liability company having an office and principal place of business located at 1385 Kemper Meadow Drive, Cincinnati, Ohio 45240.

6.     TRPN is a Nevada corporation, with its principal place of business located at 901 Hale Place, Suite 101, Chula Vista, California 91914.

7.     This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse (S&S is a citizen of Ohio and TRPN is a citizen of either California or Nevada) and the amount in controversy exceeds $75,000.

8.     This Court has personal jurisdiction over TRPN, as set forth in Ohio Rev. Code § 2307.382(A), because it contracted for services to be performed in Ohio, and did in fact regularly transact business with S&S in Ohio.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) and 1391(c)(2), because a substantial part of the events and omissions giving rise to the claims occurred in this judicial district and the defendants may be sued in any judicial district in which they are subject to personal jurisdiction.

## ALLEGATIONS COMMON TO ALL CLAIMS

10.     S&S, as a third-party administrator, possesses the extensive manpower and skill set necessary to provide a sophisticated line of administrative services, including but not limited to the research, analysis, development, maintenance, and implementation of systems, software, and products used in third-party administration and the delivery of health care benefits and services.

11.     According to its website, TRPN is the largest and fastest growing proprietary provider network in the United States, with more than 1.5 million provider locations, including greater than 5,000 hospitals and 100,000 ancillary facilities throughout the United States.

12.     On or about April 12, 2017, S&S and TRPN entered into a Memorandum of Understanding ("MOU"), a true and accurate copy of which is attached hereto as **Exhibit A**.

13.     The MOU specifically recognized that certain provisions of the MOU would be recognized as "Binding Provisions."

14.     The Binding Provisions of the MOU provide that S&S shall be compensated in full by TRPN for the Implementation, stating, "S&S will be entitled to compensation for all activities and expenses associated with research, analysis, development, maintenance and consultative work performed by S&S staff or designated third party, if necessary, as considered standard in the course of an implementation process by a third-party administrator if such compensation is authorized by TRPN in a statement of work, work order, schedule or other written document executed by TRPN.

All fees will be agreed upon in advance, in writing and can be project or hourly based or some combination thereof."

15.     Immediately following the execution of the MOU, S&S employees and TRPN officers and employees began exchanging data and documentation which, days later, lead to the creation of a detailed four phase statement of work/schedule of work referred to as the Implementation Plan (the "Implementation Plan"). On April 20, 2017, S&S and TRPN exchanged the authorized and ratified Implementation Plan attached hereto as **Exhibit B**.

16.     Consistent with the direction given by TRPN and the creation and performance of the Implementation Plan, S&S had dedicated, and continued to dedicate, an extensive amount of manpower, time, and expense to the Implementation.

17.     TRPN and S&S established a standard schedule of conference calls and created direct points of contact in order to further the performance of services by S&S. TRPN also instructed that S&S make "daily progress" toward completion of the Implementation.

18.     On June 6, 2017, TRPN's CEO, Robert Malone emailed additional information to S&S's owners in the form of the "The Flow Process of TRPN SSIS Packages," a true and accurate copy of which is attached hereto as **Exhibit C**, to help S&S further understand the "scope of work." Malone further noted, "We are moving forward and thank you for the hard work and all the efforts!!!"

19.     With the written authorization and ratification of TRPN, the Implementation Plan was expanded and elaborated upon to include the Project Definition, an additional narrative further explaining what S&S was required to do (the "Project Definition") and a more detailed schedule of work (the "Project Plan").

20. The Project Definition elaborated upon the work both provided, and to be provided, by S&S to TRPN, as well as the goals to be met, including the "approach, resources, and timeline to meet these goals." A true and accurate copy of the Project Definition is attached hereto as **Exhibit D**.

21. The TRPN-authorized and ratified Project Plan initially included a detailed list of approximately 140 tasks and subtasks and the respective estimated durations, start dates, end dates, percent of completions, resource names, and notes.

22. At the direction and authorization of TRPN, the Project Plan continued to be expanded upon and modified into different updates of the Implementation Plan. A true and accurate copy of the Project Plan as of June 29, 2017 is attached hereto as **Exhibit E**.

23. Consistent with the direction and authorization given by TRPN through the Implementation Plan, TRPN further ratified the authorization given to S&S by: a) giving S&S all TRPN system logins/passwords; b) making S&S the primary contact at Rackspace for TRPN service issues; c) adding S&S to all TRPN system notifications; d) giving S&S access to all TRPN source code; e) setting up a secured FTP access for S&S for synchronizing TRPN's system with S&S's system for provider information; and e) giving S&S TRPN's CHS password so that S&S could use TRPN's account for repricing.

24. Representatives of TRPN directing the development, adoption, expansion, and ratification of the Implementation Plan on behalf of TRPN included, but were not limited to: TRPN's owner, Blaine Pollock ("Blaine"); TRPN's Chief Executive Officer, Robert Malone ("Malone"); TRPN's Chief Technical Officer, Craig Krumbhaar ("Krumbhaar"); TRPN's Controller, June Qui ("Qui"); TRPN's Chief Revenue Officer, Bryan Hebert ("Hebert"); and TRPN's Chief Risk Compliance Officer, Christine Kair ("Kair").

25.     On July 22, 2017, S&S provided an initial invoice to TRPN's CEO, Malone, for services rendered through July 19, 2017 (the "First Invoice"), a true and accurate copy of which is attached hereto as **Exhibit F**.

26.     The First Invoice itemizes **$519,090.00** of services which were performed by more than 27 S&S employees, amounting to over 2,800 hours up through July 19, 2017, and for which TRPN was obligated to pay S&S pursuant to the terms of the MOU.

27.     On July 25, 2017, three days after receiving the First Invoice, TRPN's CEO, Malone, ratifying the prior acts of S&S and authorizing further action, introduced S&S, via email to TRPN's vendor providing Medicare index values, Clear Health Strategies ("CHS"), noting:

> I would like to introduce you to Ruth Brown and David Van Voorhis from S&S. As I mentioned to you we are developing a new product and S&S is building the platform for us. Ruth has questions surrounding CHS and needs to speak with you for some info on our behalf.

28.     On July 31, 2017, consistent with and pursuant to the Implementation Plan, S&S incurred $26,954.37 in expenses for assorted software/hardware costs for COBL servers and server support and Visual Studio, solely for the purpose of completing portions of the Implementation.

29.     On August 1, 2017, TRPN's owner, Blaine, verified in writing his receipt of the invoice and indicated how grateful TRPN was for the services rendered by S&S.

30.     After receipt of the First Invoice, TRPN continued to push for performance of the Implementation Plan by S&S.

31.     On August 2, 2017, TRPN notified S&S of a list of 10 additional processes to be added to the "workbench/viewer" created by S&S for TRPN.

32.     TRPN also represented to S&S that TRPN desired to further TRPN's business relationship with S&S.

33.     On August 15, 2017, in furtherance of a business relationship between S&S and TRPN, and as additional ratification of the services provided by S&S to TRPN, TRPN held a luncheon attended by representatives of S&S, some of TRPN's key self-insured clients and TRPN vendors for the purpose of introducing S&S and explaining the role that S&S would serve for TRPN's clients and vendors.

34.     In an email dated August 17, 2017 from TRPN's Chief Risk Compliance Officer, Kair, to S&S, ratified the extensive amount of Implementation services authorized by TRPN, as a result of the expanded reports which would be needed from S&S, including, but not limited to:

1.  Daily revenue report: Report shows TPA's daily adjudicated claims submitted to S&S and the amounts for those claims.
2.  Daily cost report: Report shows how much we need to pay to individual providers for those adjudicated claims S&S received on that day.
3.  Daily payment received report: Report that shows which claims we receive money in the bank. S& S needs to do the receivable/revenue reconciliation.
4.  Daily checks cut report: Report that shows checks that S&S instructs VPay to cut after verifying the money received from TPA for individual claims
5.  Daily/monthly adjustment under negotiation report: Report shows which claims go to appeal process (pending)
6.  Daily/monthly complete adjustment report: Report shows how much we pay to get the claims settled individually
7.  Monthly AR aging report
8.  Monthly outstanding checks report. S&S/VPay needs to do the AP reconciliation.
9.  Monthly void checks report (Providers don't accept the check or Providers lose the checks). Report shows check number, claim number, amount, and the reason for void
10. Monthly reissue checks report (Adjustments are settled or Providers lose the checks) Report shows check number, claim number, amount and the reason for reissue

35.     On August 23, 2017, consistent with the representations made by TRPN regarding a future business relationship between TRPN and S&S, S&S and TRPN exchanged a proposed Master Services Agreement ("MSA"), including a Compensation Agreement, an Administrative Services Agreement, a System and Application Support Services Agreement, and a HIPAA Privacy Agreement.

36. The Compensation Agreement exchanged by S&S and TRPN included a copy of the First Invoice and reaffirmed TRPN's obligation to pay for those services as well as the additional services rendered by S&S. S&S also indicated that it would agree to limit the Implementation cost to $800,000, provided no further substantive changes were requested by TRPN. Neither party signed the MSA, Compensation Agreement, Administrative Services Agreement, System and Application Support Services Agreement, or HIPAA Privacy Agreement.

37. On August 30, 2017, based upon the representations made by TRPN and the discussions between S&S and TRPN's owner, Blaine, S&S provided to Blaine a revised Compensation Agreement, a Marketing Agreement, and an additional copy of the Project Definition.

38. The revised Compensation Agreement continued to confirm that TRPN was obligated to compensate S&S fully for the services rendered for the Implementation and estimated that the total personnel cost for the Implementation would be $800,000 (including the $519,090 that had already been billed). The revised Compensation Agreement also indicated that TRPN would make an initial payment of $250,000.

39. The proposed Marketing Agreement further confirmed the obligation of TRPN to pay S&S for the Implementation by providing that, in lieu of paying $400,000 of the $800,000 to S&S, TRPN would: a) grant S&S an exclusive license and TPA rights for administration of all TRPN Network Access and Direct Pay Products; b) grant S&S the exclusive right to create derivative Co-Branded Primary Network and Physician Only Network products with a 75/25 passive revenue split; c) grant S&S the exclusive right to Co-Brand and Resell TRPN Network Access and Direct Pay Products with a 50/50 split of the profits; and d) grant S&S 10% of the profits from all TRPN supported products and services, excluding the derivative products.

40.     On August 31, 2017, in ratification and confirmation of TRPN's obligations under the MOU, Blaine committed in writing to S&S owner, Rich Rostowsky, that TRPN would send a "first check for 250k" as a good faith payment with respect to the Implementation. Blaine also represented in writing that "I will get you a simplified agreement for the system per your numbers…and the standard rate for claims processing…."

41.     To further induce S&S to continue with the Implementation, Blaine represented that: "Our goal is to move our operations to you," "S&S will be the single source point to access direct pay and share in the profits," "We will have a holding company with top line revenue of 200 million before end of 2018," "Nevertheless our market value will far exceed our dreams," and "Basically S and S along with TRPN will replace Optum."

42.     Throughout the end of August 2017, S&S, with the authorization and direction of TRPN, engaged in extensive testing of the Implementation to date, broken down by a number of specific fields. As noted by TRPN's Chief Technical Officer, Krumbhaar, in an email to S&S dated August 31, 2017, "Below is the S&S and TRPN analysis summary side by side. We have some minor product differences but at first glance your numbers look great."

43.     Based upon the representations made by Blaine, the directions of TRPN, and the terms of the MOU, S&S continued to provide extensive services toward completion of the Implementation up through the middle of September 2017.

44.      Between July 19, 2017 and the middle of September 2017, more than 17 S&S employees dedicated over 1,360 hours toward the Implementation, at a total additional cost of $240,380.00. Attached hereto as **Exhibit G**, is a true and accurate copy of the itemized list of additional hours of service rendered by S&S employees for the Implementation after July 19, 2017.

45.     Pursuant to the terms of the MOU, a total of $786,424.37 (i.e. $759,470.00 in fees and $26,954.37 in expenses) plus interest is due and owing from TRPN to S&S.

46.     Despite S&S providing wiring instructions and follow up calls, texts, and emails regarding the promised initial payment of $250,000, TRPN failed to make the payment as promised. Neither the revised Compensation Agreement nor the Marketing Agreement were signed, nor did Blaine provide a simplified agreement per S&S's numbers.

47.     To date, TRPN has refused to pay for any of the services provided by S&S, in violation of its obligations set forth in the MOU.

### COUNT ONE – DECLARATORY JUDGMENT

48.     Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

49.     S&S and TRPN entered into a MOU with various "Binding Provisions" which, by definition, are legally binding and enforceable agreements between S&S and TRPN.

50.     In accordance with the MOU's Binding Provision, S&S is entitled to compensation for all activities and expenses associated with research, analysis, development, maintenance, and consultative work performed by S&S staff or designated third party as considered standard in the course of an implementation process by a third-party administrator if such compensation is authorized by TRPN in a statement of work, work order, schedule, or other written document executed by TRPN.

51.     TRPN provided written authorization and ratification of the Implementation by way of the creation and expansion of the Implementation Plan, Project Definition, Project Plan, and other written representations by TRPN, which resulted in S&S dedicating an extensive amount of manpower, time, and expense toward completion of the Implementation.

52.     In accordance with the authorizations by TRPN directing S&S to perform such work, S&S performed such activities and incurred expenses which are considered standard in the course of an implementation process by a third-party administrator.

53.     Despite performing such activities, incurring expenses, and invoicing TRPN for the same, TRPN has refused to make payment to S&S for such activities and expenses.

54.     TRPN has materially breached the MOU by failing to compensate S&S for all such activities and expenses as required under the MOU.

55.     S&S has complied with all of its requirements set forth in the MOU.

56.     An actual case or controversy exists because TRPN refuses to pay S&S pursuant to the terms of the "Costs" provision of the MOU. A judgment by this Court would terminate the controversy giving rise to this action.

57.     Pursuant to 28 U.S.C. § 2201, S&S is entitled to a declaratory judgment which states that:

a.  Pursuant to the terms of the "Costs" provision of the MOU, TRPN is obligated to compensate S&S for all activities and expenses associated with the Implementation;

b.  TRPN's refusal to pay for all activities and expenses associated with the Implementation constitutes a breach of the MOU;

c.  TRPN remains obligated to compensate S&S for all activities and expenses associated with the Implementation that S&S otherwise would have received, but for TRPN's breach of the MOU.

## COUNT TWO – BREACH OF CONTRACT

As a further and separate cause of action, S&S states as follows:

58.     Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

59.     S&S and TRPN entered into a MOU with various "Binding Provisions" which, by definition, are legally binding and enforceable agreements between S&S and TRPN.

60.     In accordance with the MOU's Binding Provisions, S&S is entitled to compensation for all activities and expenses associated with research, analysis, development, maintenance, and consultative work performed by S&S staff or designated third party as considered standard in the course of an implementation process by a third-party administrator if such compensation is authorized by TRPN in a statement of work, work order, schedule or other written document executed by TRPN.

61.     TRPN provided written authorization and ratification of the Implementation by way of the creation and expansion of the Implementation Plan, Project Definition, Project Plan, and other written representations by TRPN, which resulted in S&S dedicating an extensive amount of manpower, time, and expense toward completion of the Implementation.

62.     S&S performed such activities and incurred expenses which are considered standard in the course of an implementation process by a third-party administrator.

63.     Despite performing such activities, incurring expenses, and invoicing TRPN for the same, TRPN has refused to make payment to S&S on amounts invoiced.

64.     S&S has complied with all of its requirements set forth in the MOU.

65.     TRPN has materially breached the MOU by failing to compensate S&S for all such activities and expenses as required under the MOU.

66.     As a direct and proximate result of TRPN's material breach of the MOU, S&S has been damaged in an amount to be determined at trial, but no less than $786,424.37.

## COUNT THREE – PROMISSORY ESTOPPEL
### (in the alternative)

As a further and separate cause of action, S&S states in the alternative to Counts One and Two as follows:

67. Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

68. TRPN made clear and unambiguous promises and representations to S&S, both in the MOU and in subsequent statements set forth above, that it would compensate S&S for all activities and expenses associated with research, analysis, development, maintenance, and consultative work performed by S&S staff or a designated third party. Such promises and representations made by TRPN include, but are not limited to:

a. TRPN's creation and expansion of the Implementation Plan;

b. TRPN's instruction that "daily progress" be made toward completion of the Implementation;

c. Written authorization and ratification by TRPN to expand and elaborate upon the Implementation Plan to include the Project Definition and Project Plan;

d. Directives by TRPN Representatives as to the development, adoption, expansion and ratification of the Implementation Plan;

e. TRPN's continued push for performance of the Implementation Plan following its receipt of the First Invoice submitted by S&S;

f. Representations by TRPN on August 31, 2017 that it would send a "first check for 250k" as a good faith payment with respect to the implementation.

69.     As a result of such representations set forth above and throughout this Complaint, S&S dedicated a significant amount of time and expense toward completing the Implementation, resulting in $786,424.37 to date in fees and expenses incurred by S&S.

70.     S&S reasonably relied upon TRPN's promises, representations, and authorizations in performing such extensive work.

71.     TRPN should have reasonably expected, and in fact intended, that S&S would rely upon TRPN's promises and representations in performing this work.

72.     S&S was damaged by its reliance upon such promises and representation when TRPN refused to make payment on all amounts invoiced by S&S.

73.     Injustice can be avoided only by enforcement of the promises and representations made by TRPN to compensate S&S for all work performed in the Implementation.

## COUNT FOUR – UNJUST ENRICHMENT
### (in the alternative)

As a further and separate cause of action, S&S states in the alternative to Counts One and Two as follows:

74.     Plaintiff restates each and every allegation set forth above as if fully rewritten herein.

75.     S&S conferred a benefit to TRPN by performing extensive services related to the Implementation.

76.     S&S performed such work in reliance upon the representations and promises made by TRPN that it would be compensated for such services.

77.     TRPN had knowledge of and received the benefit of S&S's continued services for TRPN during the requisite time period set forth above.

78.     TRPN was aware that S&S had conferred this benefit on TRPN.

79.     Despite its awareness of receiving such benefit, TRPN failed to provide any compensation, let alone any just compensation, to S&S for such services rendered.

80.     TRPN's retention of the benefit of S&S's services without providing payment to S&S would be inequitable and unjust.

WHEREFORE, Plaintiff S & S Healthcare Strategies, Ltd. prays for a judgment against Defendant Three Rivers Provider Network, Inc. in the following manner:

a.  As to Count One, a Declaratory Judgment finding that pursuant to the terms of the MOU between Plaintiff and Defendant: 1) Pursuant to the terms of the "Costs" provision of the MOU, TRPN is obligated to compensate S&S for all activities and expenses associated with the Implementation; 2) TRPN's refusal to pay for all activities and expenses associated with the Implementation constitutes a breach of the MOU; and 3) TRPN remains obligated to compensate S&S for all activities and expenses associated with the Implementation that S&S otherwise would have received, but for TRPN's breach of the MOU.

b.  As to Count Two, a judgment in favor of Plaintiff awarding monetary damages in an amount to be determined, but in excess of $786,424.37;

c.  As to Count Three, an award of compensatory damages in an amount to be determined at trial, but in excess of $786,424.37;

d.  As to Count Four, an award of compensatory damages in an amount to be determined at trial, but in excess of $786,424.37;

e.  On all Claims, pre- and post-judgment interest, costs, attorneys' fees, and all other relief at law or in equity which the Court deems proper and just.

Respectfully submitted,

/s/ Peter A. Saba
Peter A. Saba (0055535)
Joshua M. Smith (0092360)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
**Attorneys for Plaintiff**

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a jury on all issues triable to a jury.

Respectfully submitted,

/s/ Peter A. Saba
Peter A. Saba (0055535)

16