**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **S&S HOLDCO, INC.** | : | Case No. 1:17-cv-00783 |
| | : | |
| Plaintiff, | : | Judge William O. Bertelsman |
| | : | |
| v. | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| **THREE RIVERS PROVIDER** | : | **PLAINTIFF S&S HOLDCO, INC'S** |
| **NETWORK, INC.** | : | **REPLY IN SUPPORT OF MOTION TO** |
| | : | **COMPEL DEPOSITION OF BLAINE** |
| Defendant. | : | **POLLOCK** |
| | : | |

TRPN's opposition serves to confirm Pollock's managing agent status with TRPN, and the elaborate ruse by Pollock and TRPN to create the illusion of Pollock's separation from TRPN while he continues to receive (direct and then indirect) payments from TRPN and continues to direct TRPN through his consultation. Indeed, the evidence submitted by both parties makes clear that:

(a) TRPN (through its corporate intermediary, "TRPN Direct Pay, Inc.") now pays a Swiss entity created in June 2018, "Direct Pay AG," on a quarterly basis for a purported "license" to use Direct Pay;

(b) Prior to this "licensing" relationship in 2018, TRPN represented to S&S in an April 12, 2017 Memorandum of Understanding (MOU) that TRPN solely owned Direct Pay, and that it was contracting with S&S to assist in its development and implementation;

(c) According to TRPN and Pollock's own daughter, Pollock is the "creator" of Direct Pay, he "solely" developed it, and it is "his" product;

(d) After this litigation began, Pollock divested his shares in TRPN to his daughters and fled the country;

(e) After Pollock departed, TRPN continued to make direct monthly payments to Pollock in 2018, and held an independent contractor relationship with him;

1

(f) Direct payments to Pollock eventually ceased in September 2018, just after Direct Pay AG and TRPN Direct Pay, Inc. were created, and TRPN began making quarterly payments for the "license" to use Direct Pay;

(g) Despite the cessation of direct payments to Pollock in September 2018, Pollock continued (and still continues) to operate as a "consultant" for TRPN, including with particular respect to Direct Pay, providing advice and direction as to its use, hosting periodic meetings and workshops as late as October 2019, and discussing Direct Pay "accounts" with TRPN's Controller, Carla Dower;

(h) Scott Smith claims that TRPN is unaware of Pollock's current location and does not have an address for him, but simultaneously concedes that he is able to contact Pollock regarding appearing for a deposition and for providing "consultation" to TRPN as to Direct Pay.

Notwithstanding the above, TRPN baselessly asserts that because Pollock has not had a formal association with TRPN since September 2018 and has not received <u>direct</u> payments from TRPN, he cannot be considered a managing agent under Rule 30. As this Court knows, however, the inquiry under Rule 30 is a functional one, "dependent largely on the functions, responsibilities, and authority of the individual <u>respecting the subject matter of the litigation</u>." *Libbey Glass v. Oneida, Ltd.,* 197 F.R.D. 342, 350 (N.D. Ohio 1999)("In any event, it is clear that the deponent need not have a formal association with the corporation to be deemed its managing agent."). Thus, "[w]hether a proposed deponent falls into a particular category of employees or agents is therefore less relevant than the individual's specific functions and authority." *Id.* Further, where the examining party provides "enough evidence to show that there is at least a close question as to whether the proposed deponent is a managing agent," a court should accord managing agent status. *See Stacey v. ZF Lemforder Corp*., No. 05-CV-72777-DT, 2007 U.S. Dist. LEXIS 4569, at *6 (E.D. Mich. Jan. 23, 2007) citing *United States v. Afram Lines, Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994).

Here, the question as to whether Pollock can be deemed a managing agent of TRPN for purposes of this litigation is not a close one. Pollock is TRPN's founder and former President/CEO,

a central witness to this lawsuit, and the purported "creator" and "developer" of Direct Pay (the software at issue). He also continues to act as a "consultant" for TRPN <u>with respect to Direct Pay</u>, and is receiving payments for that work through corporate intermediaries. Given the centrality of both Pollock and Direct Pay to this litigation, and Pollock's continued functions and authority over the product at issue and its use by TRPN, TRPN should be compelled to produce him as a managing agent for purposes of this litigation.

### I. S&S' Motion to Compel is not "mooted" by its Motion for Leave to Amend

Without citing any law in support, TRPN initially tries to avoid the merits of this motion to compel by claiming it is "mooted" by S&S' motion for leave to add Pollock as a party. That is wrong, and in no way supported by the plain language of Rule 30.

Rule 30 allows a party to depose <u>any person</u>, including a party, without leave of court except as provided in Rule 30(a)(2). Fed. R. Civ. P. 30(a)(1). While a deponent's attendance may be compelled by subpoena under Fed. R. Civ. P. 45, "a subpoena is not necessary if the person to be examined is a party <u>or an officer, director, or managing agent of a party</u>." *Jacobs v. Floorco Enters.*, No. 3:17-CV-90-RGJ-CHL, 2020 U.S. Dist. LEXIS 46921, at *46 (W.D. Ky. Mar. 18, 2020)(emphasis added). Instead, "if a corporation is a party, the deposition notice compels it to produce <u>any</u> officer, director or managing agent named in the notice." *Id.* (emphasis added).

In other words, the "person" can be compelled to testify without subpoena if they are (a) a party; or (b) an officer, director, or managing agent of a party. It can be either, or it can be both. Here, Pollock is a managing agent of TRPN, and he may later become a party to this litigation. Either way, his status as a managing agent of TRPN obligates TRPN to produce him for deposition. TRPN's arguments to the contrary are baseless.

3

**II.  TRPN's explanations regarding Direct Pay AG and TRPN's licensing arrangement with this Swiss entity simply highlights the deceptive way through which payments to Pollock continue to be made.**

TRPN admits that TRPN Direct Pay was created in 2018 for the purpose of utilizing the software "Direct Pay." However, TRPN now explains that Direct Pay is not actually owned by TRPN or TRPN Direct Pay, but is instead owned by a Swiss Company, "Direct Pay AG," through which TRPN (via its corporate intermediary, TRPN Direct Pay) licenses its use in exchange for quarterly payments.

Notwithstanding TRPN's attempts to distance itself from Pollock and Direct Pay, it is clear that Direct Pay AG is nothing more than yet another corporate intermediary through which payments to Pollock are made.

First, TRPN's disclaimer of any ownership interest in Direct Pay is telling given that TRPN repeatedly asserted in 2017 that they were the sole owner of the concept. Indeed, in the April 12, 2017 Memorandum of Understanding (MOU) between S&S and TRPN, TRPN emphasized that:

- The parties intend to enter into an agreement in which TRPN and S&S will cooperate to complete the implementation of <u>the TRPN technology and concept</u> known as "Direct Pay product;"

- TRPN is in the process of filing for a U.S. Patent for patent rights of <u>its Direct Pay product</u>;

- In return for S&S' assistance and resources in developing and implementing <u>its Direct Pay product</u>, shall establish a percentage of revenue share received by TRPN from the Direct Pay product, percentage of revenue share to be determined at a later date; and

- Both parties intend to work together <u>to implement TRPN's Direct Pay line of products</u>.

(*See* Second Amended Complaint, Exhibit 1, Doc#61-1, PAGEID 336). The MOU's "Binding Provisions," further provide that "TRPN owns the right to its Direct Pay product exclusively, and S&S will not utilize this product and/or concept and develop it outside of the TRPN and S&S

4

relationship." (*Id.*). Given the above, it is unclear why TRPN would now pay a Swiss entity on a quarterly basis for a license to use its own product.

Further compounding this confusion is testimony by Pollock's own daughter in May 2019 (Jennifer Roberts), that <u>Pollock</u> is the purported creator and developer of Direct Pay, and that it is <u>his</u> product:

| | | |
|---|---|---|
| Roberts: | "…[Pollock] is a consultant for our company." |
| Counsel: | "A consultant of what?" |
| Roberts: | "When people have questions about – <u>like, Direct Pay, that's his product. He developed it</u>." |
| Counsel: | "And so he will tell people how to develop the product Direct Pay?" |
| Roberts: | "<u>No, he created the product Direct Pay</u>." |
| Counsel: | "So will he provide instruction to TRPN employees into how to develop that product? |
| Roberts: | "The product is developed already. If they have questions on how it works, then he'll answer them. |
| Counsel: | "Did he assist with the development? |
| Roberts: | "<u>He developed the product, so yes</u>. |
| Counsel: | "So he solely developed the product?" |
| Roberts: | "<u>Yes</u>." |

(*See* Exhibit 23 to Prior Affidavit of Counsel, Doc #81-1, PAGEID 581-582). Again, if this is Pollock's product, it is unclear why TRPN is paying a supposedly unrelated Swiss entity for a license to use it.

Next is the suspect timing of Direct Pay AG and TRPN Direct Pay's creation, immediately prior of TRPN's ceasing of direct monthly payments to Pollock. Indeed, public records indicate

5

that Direct Pay AG was formed on June 14, 2018 (at roughly the same time as TRPN Direct Pay, Inc.), with the purpose of holding "shares in companies, companies at home and abroad of all kinds, as well as to provide services to those involved, to manage and market them and to hold licenses, patents, trademarks and rights of all kinds."[1] (*See* **Exhibit 1-2** of Current Smith Aff., attached as **Exhibit A**).

Up to this point, Pollock had been receiving direct monthly wire transfers from TRPN in the amount of $21,153.85. (*See* Scott Smith Dec., ¶ 24 and Exhibit 3, Doc#85-1, PAGEID 847, 853-854). Beginning in September 2018, however (two months after Direct Pay AG's and TRPN Direct Pay's creation), the direct monthly payments to Pollock ceased, and the quarterly payments to Direct Pay AG from TRPN Direct Pay began. Notably, however, payment records show one more payment (appearing to be quarterly) is made to Pollock in February 2019, in the amount of $78,405.45. (*Id.*). That payment is then reversed on the same day without explanation. (*Id.*).

TRPN's Controller, Carla Dower, confirmed via deposition testimony that the above was simply a discrete way to continue paying Pollock. Specifically, Dower testified that TRPN makes payments to Pollock, that those were recently changed from monthly to quarterly, and that Pollock is entitled to such payments "in the future." (*See* Prior Counsel Affidavit., Exhibit 8, Doc#81-1, PAGEID 478-480). Months later, Ms. Dower submitted a contradictory declaration in response to a motion to compel Pollock in the Qiu Litigation, claiming she was "confused" on the issue of payments in her April 2019 testimony, and that TRPN actually does not make any payments to Pollock. (*See* Scott Smith Dec., Exhibit 4, Doc#85-1, PAGEID 855-866). However, Dower never explains (i) the basis for her "confusion," (ii) what quarterly payments she was referring to, nor

---

[1] This is a translation from German to English based upon the publicly available "purpose" provided on Switzerland's Central Business Name Index. A copy of this information (in German) is attached as **Exhibit 1** to the Smith Affidavit, as is the translation (**Exhibit 2**).

(iii) whether Pollock receives <u>indirect</u> payments from TRPN (i.e., through TRPN Direct Pay and/or Direct Pay AG). Clearly, her confusion arose from the way in which the payments to Pollock were actually being made (i.e., through corporate intermediaries), and her only mistake was implying that TRPN *directly* pays Pollock.

Finally, is the undisputed testimony as to Pollock's continued "consulting" relationship with TRPN, in which he continues "to consult on various issues as they arise related to the Direct Pay product." (*See* Scott Smith Dec., ¶ 30, Doc#85-1 PAGEID 848). This includes attending Direct Pay "workshops," providing "guidance" on how Direct Pay works, speaking with TRPN's controller regarding accounts for a separate Direct Pay entity, hosting twice-annual "planning conferences" in Italy, providing direction to TRPN's controller, making managerial decision through TRPN's CEO (Scott Smith), and making frequent periodic phone calls to various TRPN employees, including its IT consultant. (*See* Motion to Compel (reciting evidence), Doc#81, PAGEID 440-441). It is beyond belief that Pollock would engage in such activities for a product he supposedly created and developed, and yet have no form of compensation for assisting with that product in the future.

Given the above, it is readily apparent that TRPN's "licensing" arrangement with Direct Pay AG is nothing more than a discrete way of continuing to pay Pollock for his continued actions as TRPN's managing agent, with particular respect to Direct Pay. As confirmed by Pollock's daughter, Direct Pay is <u>Pollock's</u> product, and TRPN now pays quarterly for its use. For TRPN to now claim that (i) they have no further relationship/contact with Pollock, (ii) they merely license Direct Pay from a Swiss entity formed in 2018, and (iii) they have "no knowledge related to the formation, ownership, or operation of Direct Pay AG" is simply nonsensical and belied by the facts.

7

### III. The Superior Court of California's conclusion on a motion to compel Pollock in the Qiu Litigation provides further support for Pollock's managing agent status in this litigation.

TRPN also asserts (wrongly) that the decision in the Qiu Litigation denying plaintiff's motion to compel warrants the same result here. A review of that decision, however, makes clear that it is entirely distinguishable, and in fact supports S&S' position, not TRPN's.

In denying the motion to compel, the Qiu Court recited various evidence that Pollock remains heavily involved with TRPN as to a product called Direct Pay, including through periodic workshops, quarterly payments through a "separate entity," and management and implementation of the product:

> **The evidence indicates that more recently Mr. Pollock has been involved in a product he developed called Direct Pay**. A separate entity owns Direct Pay and TRPN licenses its use through that separate entity. According to Ms. Turner (the person designated as most qualified to testify about Mr. Pollock's past and present relationship with TRPN), the last time Mr. Pollock gave her instruction relating to TRPN was in January 2019 at a workshop regarding launching the Direct Pay product. Controller Ms. Dower testified that Mr. Pollock referred to himself as a consultant to TRPN. **The last conversation Ms. Dower had with Mr. Pollock was the same week as her deposition, in which they spoke about a Direct Pay bank account with Citi Bank**.
>
> Quarterly payments are made by TRPN for TRPN's use of Direct Pay. **Defendant has not identified the separate entity [which] owns Direct Pay, but the evidence implies that Mr. Pollock is involved with the separate entity, hence the testimony that the quarterly payments are made to Mr. Pollock as opposed to the separate entity.**

(*See* Doc#86-1, PAGEID 915). However, despite this evidence the Qiu court declined to compel TRPN to produce Pollock, given that the evidence only related to Direct Pay, not to Pollock's continued exercise of judgment and discretion over other corporate matters relevant to the wrongful termination action:

> Plaintiff has not demonstrated that Mr. Pollock exercised judgment and discretion in dealing with TRPN's corporate matters as of January 24, 2019 or thereafter. **The evidence only shows that Mr. Pollock is involved with management and**

8

**implementation of Direct Pay, a product TRPN licenses for use in its operations**.

(*Id.*). In other words, had the subject matter of the Qiu Litigation involved the development and implementation of Direct Pay, the result would certainly have been different, especially if it had been pending in federal court. *See Stacey v. ZF Lemforder Corp.*, No. 05-CV-72777-DT, 2007 U.S. Dist. LEXIS 4569, at *5 (E.D. Mich. Jan. 23, 2007)(emphasis in original)("Courts generally hold that whether a deponent is a managing agent is dependent largely on the functions, responsibilities and authority of the individual involved *respecting the subject matter of the litigation.*"); *Campbell v. Detert*, No. 11-642-ES-SCM, 2013 U.S. Dist. LEXIS 45981, at *40 (D.N.J. Mar. 28, 2013)(emphasis added)("The inquiry regarding the identification of a managing agent essentially involves the extent of the individual's decision-making discretion and unsupervised authority, the degree to which his interests converge with those o the corporation, and his general responsibilities, *particularly with regard to the matters at issue in the litigation.*").

IV.  **TRPN misapplies the law as to managing agents under Rule 30, claiming that Pollock generally cannot be a managing agent because he is not a formal officer, director, or employee of TRPN.**

TRPN also proposes an unsupported general rule that <u>former</u> officers, directors, and employees of an organization cannot be managing agents absent specific exceptions. (*See* Memo in Opp, Doc#85, PAGEID 835)("Generally, *former* officers, directors, and employees of an organization cannot be managing agents for purposes of compelling deposition testimony."). But that is not the rule in this circuit or any other, and TRPN's attempts to insert it here are unavailing.

As explained in *Stacey*, the standard for determining managing agent status, "like so many others in the law, remains a functional one to be determined largely on a case-by-case basis." *Stacey v. ZF Lemforder Corp.*, No. 05-CV-72777-DT, 2007 U.S. Dist. LEXIS 4569, at *5 (E.D. Mich. Jan. 23, 2007) citing *Libbey Glass, Inc.*, 197 F.R.D. at 349. The inquiry relies not upon

9

"whether a deponent falls into a particular category of employees or agents[;]" rather, it is "dependent largely on the functions, responsibilities, and authority of the individual respecting the subject matter of the litigation." *Id.* "The examining party has the burden of providing enough evidence to show that there is at least a close question whether the proposed deponent is a managing agent." *Stacey v. ZF Lemforder Corp.*, No. 05-CV-72777-DT, 2007 U.S. Dist. LEXIS 4569, at *6 (E.D. Mich. Jan. 23, 2007) citing *United states v. Afram Lines, Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994). However, "doubts about an individual's status as such at the pre-trial discovery stage are resolved in favor of the examining party." *Maggard v. Essar Glob. Ltd.,* No. 2:12cv00031, 2013 U.S. Dist. LEXIS 166868, at *4 (W.D. Va. Nov. 25, 2013)

Here, Pollock has clearly continued to maintain functions, responsibilities, and authority with particular respect to Direct Pay. He certainly did so at the time his deposition was noticed in November 2019, given that he had just hosted TRPN employees in Europe in the month prior, and had continually been acting as a consultant.

Moreover, Pollock's continued functions, responsibilities, and authority with TRPN particularly concern an area central to this litigation. Specifically, the development and implementation of Direct Pay, which S&S devoted significant resources to in 2017 for which it was never compensated. TRPN now concedes that Direct Pay is "Pollock's" product, that he created it, and that TRPN licenses the use of it through a Swiss entity in exchange for quarterly payments. The question as to whether Pollock remains a managing agent of TRPN with respect to Direct Pay is not close, but even if it is, that warrants a finding in favor of S&S.

### V. Conclusion

For the foregoing reasons, Plaintiff S&S Holdco, Inc. respectfully requests that this Court:

1. Compel Defendant Three Rivers Provider Network, Inc. ("TRPN") to produce its managing agent Blaine Pollock for deposition;

2. Order TRPN to pay Plaintiff's reasonable costs, including attorney's fees, associated with this motion to compel; and

3. To the extent TRPN continues to refuse or otherwise fail to produce Pollock for deposition, issue sanctions against TRPN under Fed. R. Civ. P. 37(b)(2)(A) or as this Court otherwise deems just.

Respectfully submitted,

/s/ Peter A. Saba
Peter A. Saba (0055535)
Jeffrey M. Nye (0082247)
Joshua M. Smith (0092360)
STAGNARO, SABA
& PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2701
(513) 533-2711 (fax)
pas@sspfirm.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on all counsel of record via CM/ECF this 1st day of March, 2021.

/s/ Peter A. Saba
Peter A. Saba (0055535)